We are acutely aware that the amount of time granted here is one of the shortest today, and I am hoping that does not mean that your conclusion is already reached. We have a legal argument that burns with a fire that really needs to be addressed here. As the VA and the government continually tighten down the extent of the FTCA, they, as in this case, seek to eliminate liability under it. The fact is, in this case, Ms. Doe was sexually assaulted by a VA employee performing a medical procedure with her where she was required to be there for her treatment in a federal facility, in the VA facility, during the time of her care. The VA claims that, therefore, and the district court has ruled that, well, there is nothing in his job description that says that sexual assault is part of his job description. This is absurd. Is that exactly what the district court ruled? And, you know, agree or disagree, but I understood the district court to saying that the massage that was part of the sexual assault was not part of his description, that he didn't have the authority to do that kind of treatment, but didn't actually define it as you have expressed. The district court also said that he was off base when he started the massage that led to the sexual assault. That is correct. But, as I read the district court's holding, and as we've argued on that definition, that this provider, this primary care provider provided by the VA in strain from what the VA now post hoc argues was his restricted course of allowed duties, yes, was not within his duties. He was just completely off base. The problem with that is, and I understand that when a district judge makes this decision, we stray from de novo review of the law to a abuse of discretion. And the argument here is there's absolutely zero evidence that this individual was that Mr. Luchtefeld publicly pled guilty and convicted. Counsel, in order for you to prevail, wouldn't we have to conclude that the scope of employment inquiry itself was improper? It was. In this case, I absolutely believe that. The scope of employment inquiry was improper here. If the FTCA, which it does, incorporates the Missouri law, then the scope of inquiry here was improper. There are numerous cases where an employee is found, or the employer is found to be harmful. Intentional tort was not within the person's job description because the employee was in the scope and course of their defined duties otherwise. There just can be no dispute that this gentleman was their primary care provider. There's actually no dispute about that. So is there a foreseeability test of sorts that's used to determine whether someone who's within their given range of authority does something? Does it need to be something that an employer could anticipate or foresee? Indeed, Your Honor. There is, and the Missouri Supreme Court and multiple appellate courts have defined that. Why would the VA anticipate that the individual in this case would go from acupuncture on the ear to a full-on sexual assault? I must emphasize before I answer that with the Supreme Court's, Missouri Supreme Court's own words, that we do disagree strongly that this gentleman was ever confined to acupuncture on an ear. He was assigned to treat her for her hip pain. The pain that, the course that the VA believed he was going to be doing was BFA, battlefield acupuncture. Counsel, under Missouri law, don't we have to look to see whether, well, basically the employee's motivation, and if the employee's motivation was solely for their own personal desires, they're outside the scope of their employment? No, Your Honor. That's what the district court did, and that's the error. Under Missouri law, the court has specifically said you don't weigh those two differences. As long as they're in the course and scope, there's a dual, I don't want to use dual purpose improperly here because it's under a different real theory. How would the, what happened be at all within the desires of the employer? He was providing medical care, which was his duty to this patient. Otherwise, and this is the VA's position, and we should make no mistake about it, the VA says that we are never responsible for this, even though we bring in the, we have the largest medical institution in the entire country, perhaps in the world, but definitely in the country. We have no responsibility if our employees do something we said they shouldn't. But don't you have to cabin the medical provision in the range of what the person was qualified to do? For instance, if you have a, you're being treated for heart issues, and you have a particular heart surgeon treating you, that doesn't mean that individual's capable of doing some other specific test that might also be treating you for a heart condition. Absolutely, Your Honor. That is not the case. It's similar to what's here. He's to treat the back, but he has a specific range of his qualification for doing so. That is true, but it is not this case. Mr. Lutterfeld, as a nurse practitioner, and it's defined, and even in, it was even provided, and we argued this, in defendant's own memoranda here, and the definition, the definitions attached to their affidavits, his duties were full. He had almost like physician-like duties. There's a lot of dispute over why that is so in the VA, but I assume, and sorry, it's just my assumption. Could he have prescribed pain medication for the back? He doesn't prescribe medication. Yeah, well, he can actually, certain medications. But yes, he can provide, he is a full primary care provider. Does your argument kind of turn on whether we look at the nurse practitioner in this case's broad authority as a nurse practitioner and primary care provider, and what he was authorized to do at this particular appointment? In other words, if you look just at this appointment, and what he was authorized to do there, does your argument still hold true? Judge, he had no restrictions on his authorization. He was expected to be providing acupuncture treatment, but he was authorized. If I may make it clear, he was authorized. But as to this particular appointment, it was specially, as I understood the record, it was specially scheduled. That was the only thing that she was there for was this BFA, and that was it. And they actually had to schedule it specially because he was the only BFA provider there. If you focus on that appointment, again, does your position still hold true? Your Honor, if you focus that way, you could eliminate any deviation from the care. I beg the Court, I truly beg the Court to look at the record. Other than the arguments of counsel and some vague references, and all the vague references in the affidavits written and approved then by VA employees by counsel, there is absolutely nothing in the record saying that this individual was restricted to BFA treatment. And he wasn't. He was, in fact, we have from other witnesses, that he was their primary care provider as well. But that did not, the primary care did not include massage, correct? Well, I don't know that that's necessarily defined, but there is an argument. Well, tell me if I'm wrong. I understood the government saying that you could only, you only had authority to provide a massage to a client if you had, I think it's chiropractic privileges? There was at least one witness who said that without any background or statement or any support in documentation. The documentation that same witness provided showed differently. But if we assume that that's true, yes, if he was only allowed to do massage, then the massage would have also been an assault improper in this case. But our client, Ms. Doe, had no idea of that. She was there for treatment for the pain in her hip. And he offered her, and she accepted, would you like some, I can treat that pain in your hip since this acupuncture is not working. Mr. Damachir, in your rebuttal, you can continue if you like or reserve. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Roger Keller for the United States of America. The District Court Judge Fleisig found that William Luchtefeld was outside the scope of his employment in November 2019 for two reasons. First, as a matter of Missouri law, Judge Fleisig found that sexual assault or sexual misconduct is per se outside the scope of employment. She relied on the Missouri Supreme Court in coming to that conclusion. Second of all, Judge Fleisig also found that the massage of which Mr. Luchtefeld engaged in were also outside his scope of employment because as you pointed out, Judge Kelly, he was not authorized as part of his skills, as part of his skill set with the VA to perform massages. What if he did have those privileges? What if this nurse practitioner had, I think it's within the scope of the employment? No, Judge. First of all, the Court found that day he was only to perform, as you know. As a matter of fact, she found only to perform BFA. But even assuming hypothetically that he had that, this assault would not have fallen in the scope of employment because under Missouri law, you have to show that there is a benefit to the employer in this. In other words, as she pointed out again, as a matter of fact, that there was no benefit to the government because a massage was not necessary to treat the hip pain. Furthermore, Judge Fleisig also found, as a matter of fact, that the issue here is not the massage per se, the touching of itself, it's touching the genitalia and the breast. And Judge Fleisig found, as a matter of fact, that there's no evidence that touching the genitalia and the breast was necessary to treat the hip pain. In other words... So is there another, is there a situation where you could envision a sexual assault being within the scope of a VA nurse practitioner or a medical provider's scope of employment? That, Judge, would be the Leninger matter, assuming they applied Kansas law, if you will. But putting that aside for a second, the nurse practitioner, Leninger, had a purpose for conducting and touching the genitals of those male patients. So then it's just a matter of degree? Sort of, he went too far and sexually assaulted because he had the authority and it was within the medical examination to touch that area? No, Judge. The difference is, in performing the examination, Leninger, there was a legitimate reason for touching the genitalia, looking for testicular cancer, things like that. So there was a benefit. Applying Missouri law into a Kansas situation, there was a benefit, you might say, to the employer to treat potential patients who had potential testicular cancer. Whereas in this case, even assuming he had massage privileges and even assuming he was using those for the purpose of treating hip pain, Judge Fleisig found, as a matter of fact, that there was no reason for him to touch those plaintiffs' genitals. And I understand that factual finding. And maybe I'm walking a line that doesn't matter, but even if there is authority and reason to touch the private area, the employer never benefits from the next step, which is the sexual assault. So that's where that sort of divergence is what I'd like to hear from you. I'm trying to figure out why that difference matters, that the original touching is within the scope of the examination and that's understandable, man or woman, but never is the sexual assault that follows to the benefit of the employer. So how does that fall within the scope of the employment? You're right, Judge. The sexual assault is never to the benefit of the Judge Fleisig found in Leningrad, the mixed motive, that there was some benefit in Leningrad to the employer because while he's committing a sexual assault, there was a legitimate reason to be touching the testicles to look for something like testicular cancer. We're here, even assuming plaintiffs' argument, as Judge Fleisig did, that the massage was for some, the touching was for some reason, a legitimate reason, such as treating the hip pain. There was no reason in treating that hip pain, in doing something you were theoretically authorized to do, there was no reason ever to touch the breasts or the genitalia because that had nothing to do with treating the hip pain. That had only to do with Mr. Luktefeld's desires and as the district court found, that's evident from what happens afterwards where Ms. Doe gets up and tries to report it and Mr. Luktefeld runs out and tries to stop her from reporting it. So they both knew there was no benefit to the VA of what he was trying to do. Moreover, as the record shows, the benefit to, there was no benefit to the VA because Mr. Luktefeld's actions both during and after the assault were only for him. The heavy breathing, as Ms. Doe noted in the record, and Mr. Luktefeld's, the sight of an erection afterwards, the VA policies specifically talk about when you touch patients, there's not supposed to be touching for any sexual purpose and Plaintiff has never identified a situation other than sexual purpose for which Mr. Luktefeld touched her, below her ears in this case, which is where battlefield evidence takes place. As to the argument, Plaintiff's counsel has also indicated in his brief the absence of a scope of employment under the VA Immunity Act. I would have the court look at three things with the scope of employment under the VA Immunity Act. First, under 38 U.S.C. 7316, the purpose of that for negligent torts, which has a scope of employment, to intentional torts. Because various medical malpractice cases in various state laws were couched as intentional torts, not negligent torts, and absent the waiver, those doctors and physicians and nurse practitioners would be on the hook themselves. As the case judge Fleissig cites out of the Seventh Circuit, Martin, which discusses the similar statute under the State of Wisconsin, the purpose of these statutes is to allow the individuals, the VA employees, to practice their profession without having to worry about paying out of pocket. Additionally, I direct the Court's attention to both Section A and Section E of 7316. Section A talks about the purpose of the statute is to extend FTCA application or protection for negligent torts to the VA employee. And as the Court is aware, the FTCA in and of itself has the scope of employment requirement. And then Section C of 7316 also only allows the Attorney General to certify and accept the defense of an individual so long as that scope of employment. So 7316 as a whole is clear about that. Plaintiff's Counsel also cites in their brief the Gonzalez Act, which is the military equivalent to the VA. The Supreme Court in the Levin case, Justice Skinberg clearly set out that that also requires a scope of employment requirement. If there are no other questions for the Court, I would be finished. I ask this Court to affirm Judge Fleissig's decision dismissing this case for lack of subject matter jurisdiction. All right. Thank you. Thank you, Your Honors. Mr. Danek, we'll fill out your minute and allow you to respond. Much appreciated. The panel, I'll be brief. I just have a couple of points that I need to say. The government's argument, I'll just briefly say, nullifies completely 38 U.S.C. Section 7316. There are no cases, defense counsel has been unable to cite any, and nobody can, where an intentional tort is actually part of a job description, any job description. Missouri law, the second point is, Missouri law does not require that. The Daugherty case is not even addressed by the lower court or by defense counsel, where a bartender drops a toothpick solely for her own amusement, because he thought it would be cute, in a patron's beer, causing, of course, the expected severe injury. The employer is held liable because the employee was in the course and scope of serving beer, which was her job. Brown, an Eighth Circuit case Missouri law, found that a night janitor who beat up a person going to get his car, the employer was responsible for that because the night janitor was expected to be in the course and scope of his work encountering patrons and dealing with them on that basis. And in that regard, in terms of Missouri law, rather than summarize the rest, I will conclude with the Missouri Supreme Court's language quoted in a number of cases, including those in the Eighth Circuit. The fact that an employee uses physical force not expressly authorized by his employer does not per se exonerate the employer. Whether or not an employee's use of force is within the scope of his employment is dependent upon many factors of primary importance. I'd like to stress this. Of primary importance are the nature of the principal's business. Whether or not the employment will bring the employee into contact with the public, and the likelihood that the employment will involve the use of force and whether or not the employee acts from a purely personal motive. This is a VA, a veteran, doesn't have any choice about choosing her provider or where it occurs. It must be on the VA's terms, and the VA must show some sign of responsibility. And the only other point that I would like to make, Your Honor, is that this, the argument is truly, there is no Westfall Act under State law. That is, this individual could be sued if this was a State action case. He can't be, because the government takes on that responsibility. And here they say, and we have it, so responsibility for rape vanishes with this argument. Your Honor, it shouldn't. It can't. There has to be a point where the buck stops. There's a lot more to be said, but I have run out of my time. Pardon me. Thank you. Thank you, Mr. Damick. Thank you also, Mr. Kelly. The Court appreciates the argument both counsel have provided to the Court. We will take the case under advisement.